**Affirmed and Memorandum Opinion filed June 26, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00146-CR

**SAM KUZBARY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 9**
**Harris County, Texas**
**Trial Court Cause No. 2103580**

## M E M O R A N D U M    O P I N I O N

Appellant Sam Kuzbary was charged by information with harassment.  *See* Tex. Penal Code Ann. § 42.07 (West 2016).  The jury found appellant guilty and the trial court assessed his punishment at confinement in jail for 180 days, but it suspended the sentence and ordered appellant to serve two years of community supervision.  Appellant raises six issues on appeal.

In his first issue, appellant asserts that the trial court violated his Sixth

Amendment rights to compulsory process and to confront the witnesses against him when it quashed subpoenas he had issued for three people to testify at his trial. We overrule this issue because appellant has not shown that the trial court denied him the opportunity to cross-examine any witness against him, nor did he establish that the three people he sought to subpoena would offer testimony that was both material and favorable to his defense.

Appellant's second and third issues address evidentiary rulings allegedly made by the trial court. In his second issue, appellant contends the trial court abused its discretion when it admitted evidence of prior acts by appellant. We overrule this issue because appellant has not pointed out where in the record the prior acts were offered and then admitted into evidence. Appellant argues in his third issue that the trial court abused its discretion when it admitted copies of numerous emails, rather than the originals, into evidence. We overrule this issue because the email copies were admissible as duplicates under Rule 1003 of the Texas Rules of Evidence.

Appellant argues in his fourth issue that the evidence is insufficient to support his conviction because (1) the harassment statute does not cover email communications, (2) those communications are protected by the First Amendment to the United States Constitution, and (3) the number of emails he sent to the complainant do not rise to the level of harassment criminalized under the statute. We overrule this issue because the plain language of the statute brings email communications within its purview, appellant did not preserve his facial constitutional challenge in the trial court, and the evidence establishes that appellant violated the statute by sending repeated electronic communications to the complainant with the intent to harass, annoy, alarm, abuse, or torment her in a manner reasonably likely to bring about that intended result.

In his fifth issue, appellant asserts that Harris County was not the proper venue

for his trial because he sent the emails at issue from his residence in Fort Bend County. We overrule this issue because it was undisputed that the complainant received the emails in Harris County, and venue for a harassment case is proper in either the county from which the emails were sent, or the county where the emails were received. Finally, appellant complains in his sixth issue that the trial judge was biased against him and he did not receive a fair punishment as a result. We overrule this issue because appellant failed to make a clear showing of bias or partiality by the trial court and was therefore required to object in the trial court to the sentence imposed on him, which he did not do. We therefore affirm the trial court's judgment.

## BACKGROUND

The complainant is appellant's daughter. After graduating from the University of Texas at Dallas with a degree in mathematics, the complainant moved to Houston to begin graduate studies at Rice University. Soon thereafter, appellant lost his job in the Dallas area. Appellant accepted a contract job in Houston and moved in with his daughter to save money. This living arrangement deteriorated quickly as a result of appellant's heavy drinking and verbal abuse of the complainant. The complainant made appellant move out in November; by January, she told appellant that she no longer wanted any contact with him. Appellant subsequently moved to Fort Bend County.

Appellant began emailing the complainant after she had expressed her desire to end her relationship with him. The first emails were innocuous as appellant told his daughter that he missed her. The emails soon took on a darker and more threatening tone. For the next year, appellant emailed the complainant harassing messages multiple times per day. The emails became such a problem for the complainant that she sought and obtained a two-year protective order prohibiting appellant from contacting her in any way. Appellant stopped emailing the

3

complainant while the protective order remained in effect.

Appellant resumed sending harassing emails to the complainant three days after the protective order expired. The emails were generally derogatory and bitter. They also contained what could be viewed as threats of harm.[1] The emails indicated that appellant had knowledge of the complainant's activities, so he was given a trespass notice that he was not permitted on Rice University's campus. Appellant then began sending harassing emails to various members of the faculty and staff at Rice and copying the complainant.

The complainant testified that the emails created a great deal of personal stress on her as she was concerned they might cause her to be kicked out of graduate school. The complainant also testified that the emails made her concerned for her own safety as well as the safety of various members of the Rice community. According to the complainant, appellant's emails did result in the Rice University administration removing her from teaching a mathematics class for high school students that she had helped design because the administration was concerned about her safety as well as that of the students. The stress caused by appellant's emails impacted the complainant's academic progress to the point where she had to obtain permission to delay her graduation by one full year.

Appellant was charged by information with harassment. Appellant went to

___

[1] Appellant sent more than ninety emails to the complainant. Examples include an email stating: "[Complainant], I know you have been passing my e-mails to Rice scumbag low lives. Watch out not to get burned by your own continuing defeat. Once barbecue party is over, you will not have Rice to parent you anymore. Your so-called friends at Rice security will be no more. They are not a police agency. They are a bunch of private security guards that will be decommissioned permanently when I get done." Another provides: "[Complainant], you just made your May 25th memorable with your mother. Blame yourself only for all of what is coming next." Finally, another email ran as follows: "I regret that I am sick and tired from these two. In a short time heads will be rolling and rear ends will be put on the barbecue grill. No mercy. They may elect to be part of the collateral damage which will be their loss and their lesson for a lifetime. All will be public record. Neither one of them will be able to find a hole in the ground to hide."

trial before a jury, which found him guilty. The trial court assessed appellant's punishment at confinement in the county jail for 180 days, but suspended the sentence and ordered appellant to serve two years of community supervision. The trial court also imposed conditions on appellant's community supervision. Two conditions are relevant to appellant's appeal: (1) appellant was to have no contact with several specified people, including the trial court's staff; and (2) appellant was required to serve fifteen days in the Harris County Jail. This appeal followed.

## ANALYSIS

### I. Sufficient evidence supports appellant's harassment conviction.

We address appellant's fourth issue first because success on this issue would afford him the greatest relief. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating reviewing court should first address complaints affording greatest relief). Appellant contends that the evidence is insufficient to support his harassment conviction because (1) the harassment statute does not encompass email communications, (2) the number of emails that he sent to his daughter was insufficient to qualify as criminal conduct under the harassment statute, and (3) the emails he sent are protected by the First Amendment to the United States Constitution.

#### A. Standard of review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 433 U.S. 307, 318–319 (1979)). In viewing the evidence in the light most favorable to the verdict, we must "defer to the jury's credibility and weight determinations

5

because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson*, 433 U.S. at 319 (1979)).

In analyzing legal sufficiency, we consider all evidence from the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citing *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). Direct and circumstantial evidence are to be treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). As such, knowledge and intent can be inferred from circumstantial evidence. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence but only ensure that the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

### B. The plain language of the statute covers email communications such as those sent by appellant.

Appellant initially argues that the harassment statute does not cover email communications. Because emails were the only evidence the State offered during his trial, appellant contends the evidence is legally insufficient to support his conviction.

Statutory construction is a question of law, and our review of the trial court's construction of a statute is de novo. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). We construe a statute according to its plain meaning, unless such a construction would lead to absurd results that the Legislature could not possibly have intended or the language is found to be ambiguous. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). To determine plain meaning, we examine

6

the wording and structure of the statute, construing the words and phrases according to the rules of grammar and usage, unless they are defined by statute or have acquired a particular meaning. *Id.* We also presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.*

A person commits the offense of harassment if, with the intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person sends repeated electronic communications in a manner that is likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. Tex. Penal Code Ann. § 42.07(a)(7). Electronic communications include "a communication initiated through the use of electronic mail, . . . a computer, . . . an Internet website, [or] any other Internet-based communication tool . . . ." *Id.* at § 42.07(b)(1)(A). Although the statute does not use the word "email," that word is an abbreviation of "electronic mail." *New Oxford Am. Dictionary* 564 (3d ed. 2010). Therefore, emails are covered by the harassment statute. *See Wagner v. State*, 539 S.W.3d 298, 308–09 (Tex. Crim. App. 2018) (using the ordinary and commonly understood meaning of words used in statute to determine statutory phrase's meaning); *Karanev v. State*, 281 S.W.3d 428, 429 (Tex. Crim. App. 2009) (rejecting facial constitutional challenge to harassment statute in case involving emails); *Lebo v. State*, 474 S.W.3d 402, 405–08 (Tex. App.—San Antonio 2015, pet. ref'd) (rejecting constitutional challenge to harassment statute in case arising out of emails sent by defendant). We overrule this part of appellant's fourth issue.

C.  **The evidence establishes that appellant sent more than ninety emails to the complainant with the intent to harass, annoy, alarm, abuse, or torment her.**

Appellant next argues that sending approximately ninety harassing emails to the complainant, over a period spanning more than 100 days, is insufficient to violate

the harassment statute.  We disagree.

The information alleged that appellant, "on or about March 31, 2016 continuing through July 24, 2016, did then and there unlawfully with the [intent] to HARASS, ANNOY, ALARM, ABUSE OR TORMENT another, namely [the complainant], send repeated electronic communications, to-wit: BY EMAIL to [the complainant] in a manner reasonably likely to HARASS, ANNOY, ALARM, ABUSE, OR TORMENT [THE COMPLAINANT]."  The Court of Criminal Appeals recently explained that "the communications' periodic frequency or the temporal relationship of each communication are characteristics that may further describe the communications' nature, but we do not find those characteristics necessary to the definition of repeated." *Wilson v. State*, 448 S.W.3d 418, 424 (Tex. Crim. App. 2014) (addressing the meaning of "repeated" as used in telephone section of harassment statute).  The court concluded that "the total number of communications (provided it is greater than one) and the frequency and the temporal relationship of the communications are more appropriately considered evidentiary matters that may be probative of both the defendant's intent and whether the communications are made in a manner prohibited by statute." *Id.*

Here, the jury was able to review the number and content of the emails admitted into evidence.  The jury also heard the complainant and other witnesses testify about the impact the emails had on the complainant, which we have summarized in the background section above.  Appellant, who also testified during his trial, did not deny sending the emails.  He asserted instead that the emails were sent in an effort to correct what he perceived was the complainant's "bad conduct or behavior."  The jury was free to disbelieve appellant's testimony about the reason he sent the emails at issue. *See Perez v. State*, 495 S.W.3d 374, 383 (Tex. App.— Houston [14th Dist.] 2016, no pet.).

The jury could instead infer from the evidence admitted during trial that appellant's actual intent was to harass, annoy, alarm, abuse, torment, embarrass, or offend the complainant. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (stating jury may infer intent to kill based on any facts in evidence); *Ford v. State*, 152 S.W.3d 752, 756 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("Juries may infer intent from the defendant's conduct and surrounding circumstances."). We hold that the evidence is legally sufficient to support the jury's finding that appellant, with the intent to harass, annoy, alarm, abuse, torment, embarrass, or offend the complainant, violated the harassment statute by sending repeated emails to the complainant in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend her. *See Wilson*, 448 S.W.3d at 426 (holding six telephone calls sufficient to violate the statute).

**D.      Appellant did not preserve his constitutional challenge.**

Finally, we turn to appellant's contention, raised at the end of his fourth issue, that the harassment statute is facially unconstitutional because it impermissibly infringes his First Amendment rights. Constitutional challenges to a statute, including facial challenges such as the one raised by appellant, must be preserved in the trial court. *Karenev*, 281 S.W.3d at 434. They cannot be raised for the first time on appeal. *Id.* Appellant does not point out where in the record he raised his constitutional complaint with the trial court, and our review of the record has not located any such objection. We conclude appellant has not preserved this complaint for appellate review. *See id.* Having addressed each argument raised by appellant in his fourth issue, we overrule that issue.

**II.  Appellant has not shown that the trial court violated his constitutional rights to confrontation or compulsory process when it quashed his subpoenas for three witnesses.**

Appellant complains in his first issue that the trial court improperly quashed subpoenas he had issued for three witnesses to testify during his trial.  According to appellant, this action violated both his constitutional right to confront the witnesses against him as well as his right to compulsory process.  The State initially responds that appellant has not shown where in the record the trial court denied him the opportunity to confront any of the witnesses against him.  As to appellant's compulsory process complaint, the State contends it is not preserved because appellant did not meet his burden to present evidence that the prospective witnesses' testimony would be both material and favorable to his defense.  We agree with the State on both of appellant's complaints in his first issue.

The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  U.S. Const. amend. VI; *Pointer v. Tex.*, 380 U.S. 400, 406 (1965).  The constitutional right of confrontation necessarily includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying.  *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).  A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination.  *Carroll*, 916 S.W.2d at 497.

Appellant argues on appeal that the trial court violated his confrontation rights when it quashed the subpoenas he had issued for Devon Anderson, Scott Durfee, and Dick Zansitis.  None of these three people testified as witnesses against appellant at his trial.  Appellant has not explained how this action by the trial court denied him the right to confront the witnesses against him.  *See id.* ("In short, confrontation is the check and balance that ensures fairness in our adversary system of justice, and

10

cross-examination is the essential means by which opponents test evidence proffered against them."); *Rohr v. State*, No. 08-12-00219-CR, 2014 WL 4438828, at *3 (Tex. App.—El Paso Sept. 10, 2014, no pet.) (not designated for publication) ("The right of an accused to cross-examine a testifying state's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility."). Because appellant has not shown that he was denied the right to cross-examine any state's witness against him as a result of the trial court's quashing of his three subpoenas, we conclude he has not demonstrated a violation of his Sixth Amendment confrontation rights.

Appellant also argues that the trial court's quashing of his three subpoenas violated his Sixth Amendment right to compulsory process. We review appellant's "complaints concerning limitations on the right to compulsory process under an abuse-of-discretion standard." *Lawal v. State,* 368 S.W.3d 876, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Drew v. State,* 743 S.W.2d 207, 225 n. 11 (Tex. Crim. App.1987)).

Criminal defendants have a constitutional right to compulsory process for obtaining witnesses in their favor. *See* U.S. Const. amend. VI. Compulsory process "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas,* 388 U.S. 14, 19 (1967). The right to compulsory process is not absolute, however. Defendants are guaranteed compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman v. State,* 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998). To exercise this right, a defendant must make a plausible showing to

the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Id.* at 528.

Appellant has not shown us where in the record he brought this issue to the attention of the trial court and made the required "plausible showing" that each of the three persons would provide testimony both material and favorable to appellant. We therefore hold appellant did not preserve this complaint for appellate review. *See id.* We overrule appellant's first issue.

### III. Appellant has not shown that the trial court abused its discretion on any evidentiary matters raised in his second and third issues.

In his second issue, appellant asserts that the trial court abused its discretion when it allowed "prior [criminal] acts to be admitted and used to show conformity and to show the mens rea of the crime." Appellant has not, however, provided a citation to where in the record the State offered appellant's prior criminal acts into evidence, where appellant objected, or where the trial court overruled his objection and admitted the prior acts into evidence. Our own review of the record does not reveal where evidence of prior criminal acts was admitted. Accordingly, appellant has not presented anything for our review. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record."); *see Thomas v. State*, 336 S.W.3d 703, 716 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("If an argument is not adequately briefed, there is nothing for the appellate court to review."). We overrule appellant's second issue.

Appellant argues in his third issue that the trial court abused its discretion when it admitted into evidence copies, rather than originals, of the emails appellant sent to the complainant. According to appellant, the trial court should not have admitted copies of the emails when "the original documents were available either

12

through appellant himself or [the complainant]." Appellant contends the copies are not the best evidence of the content of the emails because the complainant had been copied on emails sent directly to other people, while other emails that were admitted into evidence appeared to have been forwarded by the complainant to the police, who printed them.

We review a trial court's decision on the admissibility of evidence under an abuse-of-discretion standard and will affirm if the decision is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under Rule 1003 of the Texas Rules of Evidence, a duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.

Appellant did not dispute that the complainant received each email that was admitted into evidence. Also, the complainant testified that she received the emails at her email address and that the email exhibits were substantially similar to when she last saw them. We conclude that the State authenticated the emails as required by Rule 901. *See* Tex. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *Hunter v. State*, 513 S.W.3d 638, 640 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The trial court need not be persuaded beyond all doubt that the proffered evidence is authentic; rather, the key question for admissibility is whether the proponent has supplied facts sufficient to support a reasonable jury determination that the evidence is authentic."). Because the State established the authenticity of the emails, and appellant did not show any other reason why it would be unfair to admit copies of the emails, we hold the trial court did not abuse its discretion when it admitted them into evidence pursuant to Rule 1003.

## IV. Venue for appellant's trial was proper in Harris County.

Appellant argues in his fifth issue that Harris County was not the proper venue because he sent the emails from his home in Fort Bend County. Venue for a harassment case is proper in either a county from which the messages were sent or a county in which the messages were received. *See Salisbury v. State*, 867 S.W.2d 894, 898 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (holding in case involving telephone section of harassment statute that "venue may lie in any county where the communication was initiated as well as any county where the communication was received"). We overrule appellant's fifth issue.

## V. Appellant has not established that the trial judge was biased against him.

In his final issue, appellant asserts that the trial judge was biased against him. Appellant contends the trial judge exhibited bias through "intemperate remarks" directed at him. Appellant cites only one statement by the trial court, which occurred during the punishment phase of appellant's trial:

> I'm going to order, based on [appellant's] history of how he likes doing things, having no contact with [the complainant], [the prosecutors], myself. So if you are going to sue me, you can't talk to me directly about it and my court staff or any juror involved in this case. I'm also doing 15 days in the Harris County Jail as a condition.

Appellant argues that this statement demonstrated the trial judge's bias and he was harmed by it because he received an unfair punishment. Appellant did not object to this alleged display of bias, nor did he object at trial to his sentence.

As a general rule, in order to preserve a complaint for appellate review, the claimed error must have been presented in the trial court, thereby providing the court an opportunity to correct any error during the trial. *See* Tex. R. App. P. 33.1(a); *Luu v. State*, 440 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Absent an objection, a defendant waives error unless the alleged error is

14

fundamental—that is, it creates egregious harm. *Luu*, 440 S.W.3d at 128 (*citing Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). Harm is egregious if it deprives the defendant of a fair and impartial trial. *Powell*, 252 S.W.2d at 744. The Supreme Court of the United States has determined that the right to an impartial judge is one of the fundamental constitutional rights that require no objection at trial. *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991).

We need not decide whether appellant was required to object to the trial court's statement made during the punishment phase of trial. Even had appellant objected, the trial court would not have abused its discretion in overruling the objection because the record contains no clear showing of bias or partiality by the trial court. *Luu*, 440 S.W.3d at 128 (citing *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006)).

A defendant has a fundamental constitutional right to an impartial judge. *Id.* A judge should not act as an advocate or adversary for any party. *Id.* To reverse a judgment on the ground of improper judicial conduct, we must find (1) judicial impropriety was actually committed, and (2) probable prejudice to the complaining party. *Id.* Absent a clear showing of bias, a trial court's actions will be presumed correct. *Brumit*, 206 S.W.3d at 645. The scope of our review is the entire record. *Luu*, 440 S.W.3d at 129.

Appellant bases his argument that the trial court was biased against him entirely on the one statement quoted above. According to appellant, a "jury of lay people cannot be expected to afford the Defendant with a presumption of innocence and right to a fair and impartial trial if the trial judge's statements taint them." Judicial rulings, however, almost never constitute a valid basis for a bias or partiality challenge. *Liteky v. United States*, 510 U.S. 540, 555 (1994). These rulings "can

15

only in the rarest circumstances evidence the degree of favoritism or antagonism required" to make a fair trial impossible. *Id.*

Here, the jury had already found appellant guilty when the challenged statement was made, so the trial judge's statement could not have impacted the jury's decision on appellant's guilt or innocence. Additionally, the statement was made during the trial court's pronouncement of appellant's punishment and was a judicial statement of one of the conditions of appellant's community supervision. We hold appellant has not made a clear showing that the trial court was biased against him. *See Brumit*, 206 S.W.3d at 645. Appellant was therefore required to object in the trial court to preserve error for appellate review. *Powell*, 252 S.W.2d at 746. Because he did not, he has waived any complaint he may have had to the sentence imposed on him. *Id.* We overrule appellant's sixth issue.

## CONCLUSION

Having overruled appellant's issues raised in this appeal, we affirm the trial court's judgment.


/s/    J. Brett Busby
Justice


Panel consists of Justices Jamison, Busby, and Donovan.
Do Not Publish — TEX. R. APP. P. 47.2(b).

16